# SUTTON v. UNITED STATES.

## No. 11561.

Circuit Court of Appeals, Fifth Circuit.

Aug. 28, 1946.

Rehearing Denied Oct. 15, 1946.

HUTCHESON, Circuit Judge, dissenting.

Astor Merritt, of Douglasville, Ga., and B. Frank Whelchel, of Gainesville, Ga., for appellant.

Joel B. Mallett, Litigation Atty., O.P.A., and Allen E. Lockerman, Asst. U. S. Atty., both of Atlanta, Ga., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

Appellant was convicted upon a criminal information charging that on December 28, 1944, he willfully and unlawfully did have in his possession and under his control, in violation of Second Revised Ration Order No. 3 and General Ration Order No. 8, as amended, ten thousand pounds of sugar, the same being a rationed commodity.

No demurrer, motion to quash, or motion for bill of particulars was filed, but at the close of all the evidence the appellant moved for a direct verdict; later he made a motion in arrest of judgment. Both motions were overruled, and error is assigned to each ruling. We find it necessary on this appeal to consider only the second assignment.

A motion in arrest of judgment may be maintained only for a defect appearing upon the face of the record, and the evidence is no part of the record.[1] Although recognized in Rule 34 of the new rules of criminal procedure, the common law motion in arrest of judgment is restricted in its operation by two federal statutes. The first, 18 U.S.C.A. § 556, is directed primarily to the trial court and requires it to disregard any defect or imperfection in an indictment in matter of form "which shall not tend to the prejudice of the defendant." The second, 28 U.S.C.A. § 391, is directed to the reviewing court and requires it to disregard any error of the trial court that, regardless of its tendency, caused no prejudice to the substantial rights of the accused. These statutes put an end to the rigid rule that error being shown prejudice must be presumed, and established the doctrine that the error must be disregarded if, upon examination of the entire record, substantial prejudice does not appear.[2]

It is no longer necessary in the federal courts to follow the old common-law rules of criminal pleadings. An indictment or information in the language of the statute is sufficient except where the words of the statute do not contain all of the essential elements of the offense.[3]

The Sixth Amendment of the federal constitution requires that in every criminal prosecution the accused shall be informed of the nature and cause of the accusation against him. This means that he shall be so fully and clearly informed of the charge against him as not only to enable him to prepare his defense and not be taken by surprise at the trial, but also that the information as to the alleged offense shall be so definite and certain that he may be protected by a plea of former jeopardy against another prosecution for the same offense.[4]

If the information in the instant case failed to meet either of these requirements, it contained a constitutional defect or omission that prejudicially affected the substantial rights of appellant. Turning to the information, we note that at a certain time and place the appellant had in his possession and under his control ten thousand pounds of sugar, the same being a rationed commodity. The mere possession or control of rationed sugar is not a federal offense, and yet the information charges no other fact unless the following words constitute an allegation of fact: "in violation of Second Revised Ration Order No. 3 and General Ration Order No. 8, as amended."

[1] Bond v. Dustin, 112 U.S. 604, 608, 5 S.Ct. 296, 28 L.Ed. 835.

[2] Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314.

[3] United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135.

[4] Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314.

■ The phrase just quoted is not an allegation of fact but a legal conclusion of the pleader; it constitutes no part of the description of the offense. In The Hoppet v. United States, 7 Cranch 389, 393, 3 L.Ed. 380, Marshall, C. J., said:

"It is not controverted that in all proceedings in courts of common law, either against the person or the thing for penalties or forfeitures, the allegation that the act charged was committed in violation of law, or of provisions of a particular statute, will not justify condemnation, unless, independent of this allegation, a case be stated which shows that the law has been violated. The reference to the statute may direct the attention of the court, and of the accused, to the particular statute by which the prosecution is to be sustained, but forms no part of the description of the offense. The importance of this principle to a fair administration of justice, to that certainty introduced and demanded by the free genius of our institutions in all prosecutions for offenses against the laws, is too apparent to require elucidation, and the principle itself is too familiar not to suggest itself to every gentleman of the profession."

Later in the opinion the Chief Justice said:

"The rule that a man shall not be charged with one crime and convicted of another, may sometimes cover real guilt, but its observance is essential to the preservation of innocence. It is only a modification of this rule, that the accusation on which the prosecution is founded, should state the crime which is to be proved, and state such a crime as will justify the judgment to be pronounced."

See also a discussion in Volume 6, Encyclopedia of United States Supreme Court Reports, headed Indictments, Informations, etc., beginning on page 966, with footnotes of every supreme-court decision up to the time of the publication of this work. On page 990, the learned author said that "every ingredient of the offense must be accurately and certainly expressed" in the indictment. On page 994 it is said: "The allegation that the act charged was committed in violation of law, or of the provisions of a particular statute, forms no part of the description of the offense," citing the Hoppet case, supra, and Keck v. United States, 172 U.S. 434, 437, 19 S.Ct. 254, 43 L.Ed. 505.

See also Kohl v. Lehlback, 160 U.S. 293, 16 S.Ct. 304, 40 L.Ed. 432, which holds that a general averment of detention contrary to the constitution and laws of the United States is a conclusion of law.

In the Keck case, supra, the first syllabus reads as follows:

"An indictment for unlawfully importing and bringing into a certain port of the United States diamonds of a stated value, 'contrary to law,' with intent to defraud the United States, but not indicating what is relied on as violative of the law, is insufficient, although it charges the offense substantially in the words of the U.S.Rev.Stat. Sec. 3082."

United States v. Cruikshank, 92 U.S. 542, 557-559, 23 L.Ed. 588, deals with the right of the accused to be informed of the nature and cause of the accusation against him. The question arose upon a motion in arrest of judgment after a general verdict of guilty upon sixteen counts. The question was stated to be whether said counts were severally sufficient in law and contained charges of criminal matter indictable under the laws of the United States. The court held that all sixteen counts were so defective that no judgment of conviction should be pronounced upon them. It further held that every ingredient of which the offense is composed must be clearly and accurately alleged.

■ We have before us over one-hundred closely printed pages (triple-columned) of rules, regulations, prohibitions, and rationales, appertaining to said ration orders No. 3 and 8, of the contents of which we take judicial notice.[5] After careful study of these regulations, we have found no offense for the mere possession of sugar in violation of ration order No.

---

[5] U.S.C.A., Title 44, Sec. 307, c. 417, Sec. 7, 49 Stat. 502; United States v. Lederer, 7 Cir., 140 F.2d 136, certiorari denied 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568.

3, although there are numerous other offenses under that order with reference to sugar, including a prohibition to possess sugar, *acquired* in violation of its provisions. We have been cited to no such regulation for the mere possession of sugar. The appellee does not claim that the offense charged in this information was the possession of sugar *acquired* in violation of ration order No. 3. It claims that the offense intended to be charged was the possession of sugar in violation of ration orders No. 3 and 8. Since there is no such offense so far as order No. 3 is concerned, let us turn to order No. 8, which may or may not have been superseded by order No. 3, depending upon whether the latter covered exactly the same field.

 Conceding, without deciding, that order No. 8 was in force on December 28, 1944, the prohibitions therein consisted of sixteen sectional paragraphs, entitled Article II, Sec. 2.1 to 2.16, inclusive. This article contained over fifty prohibitions, the violation of each of which was a crime. Since the defendant was presumed to be innocent, he was also presumed not to know which of these prohibitions was the one intended unless the offense was definitely described in the information.

 The appellant has been convicted, but of what no one can say with certainty. The appellee contends in its brief that he was convicted of possessing sugar in violation of Sec. 2.8 of Art. II of General Ration Order No. 8. There are at least two offenses in that paragraph: one for possessing sugar otherwise than in accordance with the provisions of a ration order, the other for possessing sugar that was *acquired* in violation of a ration order. They are separate offenses, and this record would not sustain a plea of former jeopardy as to either. If it were permissible to amend the pleadings in criminal prosecutions after verdict, as may be done in civil cases,[6] we might be able to patch up this information so as to state an offense;

but there is no such rule in criminal procedure, and none is likely to be so long as the Sixth Amendment stands.

This information might be compared to an indictment for receiving stolen goods, knowing the same to have been stolen, if it read as follows: "Did willfully and unlawfully receive 10,000 pounds of stolen sugar in violation of a certain section of the penal code." Such an indictment would omit the essential allegation that the defendant knew the sugar was stolen property, and the reference to the statute, which defined the offense, would avail nothing. See illustration given by the Supreme Court in United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588, 593, in which the court said: "It is a crime to steal goods and chattels; but an indictment would be bad that did not specify with some degree of certainty the articles stolen. This, because the accused must be advised of the essential particulars of the charge against him, and the court must be able to decide whether the property taken was such as was the subject of larceny."

 In the sheaf of regulations before us, the first sentence in said section 2.8 seems to be relied on principally by the appellee to sustain the conviction. It provides that no person shall possess a rationed commodity except in accordance with the provisions of a ration order. This exception constitutes a part of the definition of the offense. Omit the exception, and the order simply provides that no person shall possess a rationed commodity. Clearly no one intended this: therefore, it was necessary for the information, by proper allegation, to negative the exception in the first sentence. The general rule in criminal cases relating to exceptions in statutes may be stated as follows:

In an indictment or information, it is not necessary to negative the matter of an exception made by a proviso or other distinct clause in the statute, whether in the same section or elsewhere;[7] but, if the

---

[6] Rule 15(b), of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[7] McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301; Edwards v. United States, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957; Southern R. Company v. United States, 5 Cir., 88 F. 2d 31.

exception itself is incorporated in the definition of the offense so that the elements of the crime are not fully stated without the exception, then it must be negatived.[8] An exception is something that otherwise ought to be included in the category from which it is eliminated. The office of a proviso is to except something from the enacting clause or to restrict its generality.[9]

The second sentence of said section 2.8 contains a distinct prohibition, i. e., a separate offense. It provides that no person shall possess any rationed commodity acquired in violation of a ration order. There is just as much reason to argue that this prohibition constituted the offense as there is to ascribe the charge to the first sentence, and in some aspects of the case there is more reason, since both orders 3 and 8 prohibit acquiring sugar in violation of ration orders.

■ There is no contention that the information states more than one offense. In its brief the appellee relies upon both orders No. 3 and 8 to support the charge of possessing sugar in violation of the Second War Powers Act, 50 U.S.C.A.Appendix, § 633(5), but if no offense is sufficiently stated under either order, the position of the Government is not improved by ascribing the alleged offense to both orders. Said section 633(5) penalizes the doing or omission of any act prohibited by any regulation under said statute. No such act was sufficiently described in the information, and even the reference to the regulations (if that were an allegation of fact, which it is not) merely increased the confusion, and left the accused without definite information as to the charge against him.

■ We think the court below erred in overruling the motion in arrest of judgment. We are not discussing the assignment with reference to the sufficiency of the evidence to support the verdict, because that depends upon the nature of the accusation; and, since the accused was not definitely informed as to that, it would be idle to consider the evidence. A constitutional defect in an indictment or information is not cured by the verdict.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

The majority opinion shows that the defendant did not demur, move to quash, or obtain a bill of particulars as to the information, nor indeed complain of it in any way until by motion in arrest after verdict, when, according to the established rule in this court and elsewhere, any error in the indictment, that is any defect in it short of its complete nullity, was cured by the verdict.[1]

It shows too that the evidence was ample to support, indeed was inconsistent with any other reasonable theory than that the defendant's possession of one hundred 100-pound sacks, of 10,000 pounds, of sugar was in violation of ration orders. Nevertheless, on considerations which seem to me

---

[8] Stephen on Pleading, page 443; Chitty on Criminal Law, Vol. 1, page 283, 284; 42 C.J.S., Indictments and Informations, § 140.

[9] Minis v. United States, 15 Pet. 423, 445, 10 L.Ed. 791. See also United States v. Cook, 17 Wall. 168, 173, 21 L. Ed. 538, in which the court said: "Where a statute defining an offense contains an exception, in the enacting clause of the statute, which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception."

[1] Perry v. United States, 5 Cir., 84 F. 2d 567; Bell v. United States, 5 Cir., 100 F.2d 474; Gay v. United States, 5 Cir., 12 F.2d 433; Karger v. United States, 5 Cir., 46 F.2d 302; Berry v. United States, 9 Cir., 259 F. 203; Dunbar v. United States, 156 U.S. 185, 15 S.Ct. 325, 39 L.Ed. 390; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Wagoner, 7 Cir., 143 F.2d 1. Cf. Grimsley v. United States, 5 Cir., 50 F.2d 509.

extremely technical and in disregard both of Revised Statutes, Sec. 1025, 18 U.S.C.A. § 556, and Section 269 of the Judicial Code, 28 U.S.C.A. § 391, and the established rule in the federal court,[2] the majority orders a reversal of the judgment.

The guilt of the defendant was clear, the sentence was not heavy, indeed it was quite light considering the large scale of his operations in violation of rules promulgated as war measures, and if there are cases which justify the reversal of judgments in violation of the substantial error rule and the rule that a defendant must put the trial judge in error by timely calling to his attention matters on which defendant would rely for a reversal,[3] this is certainly not one.

Ration order #8 has two sentences. The first prohibits the acquisition, possession, use, etc. of a rationed commodity "except in accordance with the provisions of a ration order". The second sentence reads, "No person shall possess, use, permit the use of, sell, or otherwise transfer any rationed commodity acquired in violation of a ration order." The first sentence is a statement, by way of exception, of a defense to illegal possession. The second sentence, a statement of what constitutes unlawful possession, in itself negates lawful possession. The information followed the second sentence precisely, and it is the uniform rule that it is sufficient to charge an offense in the language of the law denouncing it.

Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505, on which the majority relies, is not in point as is made plain in the many cases which have cited it since and differentiated it. Besides the point was taken in the Keck case not on motion to arrest[4] but by demurrer. I think it clear that if the appellant had timely demurred to the information, the demurrer must have been overruled, for the information specifically and definitely charged the offense as the second sentence of ration order #8 sets it out and there was no necessity to negative the exception in the first sentence on which the majority lays such stress.

United States v. Winnicki, 7 Cir., 151 F.2d 56, is a case directly in point. There the defendant by demurrer contended that count one of the indictment was bad because it did not negative an exception contained in ration order 1-A alleged to have been violated, to-wit, that defendant had no ration order authorizing his acceptance. The pertinent provision of the ration order reads as follows: "No person, unless permitted by ration order 1-A or by an order, authorization, or regulation issued by the War Production Board, shall (1) * * * accept a transfer of any tire * * *."

The Circuit Court of Appeals reversed the judgment sustaining the demurrer, and in a most interesting discussion, particularly at page 58 of 151 F.2d, held: (1) That the charge of the indictment that defendant purchased the tires unlawfully excluded the idea that defendant had any order, authorization or regulation permitting it; (2) that in so charging the crime, no "element" was left out; (3) that under all of the authorities an "element" of a crime is a positive factor, an affirmative act such as intent, without which there is no crime; (4) that ration order 1-A made all transfers of tires illegal unless permitted by order; (5) that since the word "unless" means except, all transfers are illegal except authorized ones; and (6) hence it is an exception, a matter of defense, and as such, it is not an element of the crime, and being an exception, the pleader did not have to negative it.

---

[2] "While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be borne in mind that the object of criminal proceedings is to convict the guilty, as well as to shield the innocent; and no impracticable standards of particularity should be set up, whereby the government may be entrapped into making allegations which it would be impossible to prove. * * *

Neither in criminal nor in civil pleading is it required to anticipate or negative a defense." Evans v. United States, 153 U.S. 584, at page 590, 14 S.Ct. 934, at page 937, 38 L.Ed. 830; McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301.

[3] Maryland Cas. Co. v. Reid, 5 Cir., 76 F.2d 30.

[4] Cf. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861.

But the case before us is not one of an exception or demurrer to an information timely made. It is one in which no objection of any kind was made to the information until after verdict. In those circumstances, courts will not search the information to find technical grounds for reversal, but will affirm, unless, which is not the case here, it is made clear that the information did not sufficiently apprise the defendant for him to make his defense. Authorities note 1, supra. The record in this case shows beyond doubt: That the defendant knew what he was charged with; that he was not misled in any way in the preparation of his defense; and that he relied on what he considered the obligation of the government to prove that he was not a carrier of sugar under the defensive provisions of the ration orders and its failure to make that proof.

I think the judgment should be affirmed, not reversed. I dissent.

### On Petition for a Rehearing.

HOLMES, Circuit Judge.

The old English statutes of jeofails and amendments did not apply to indictments. In 1789, when the original federal judiciary act was passed, the common-law motion in arrest of judgment in criminal cases was founded on exceptions to the indictment. Only an unsuccessful defendant could make the motion. It was in form a motion that the judgment be arrested or withheld, on the ground that some error appeared which vitiated the proceedings culminating in the verdict. It was necessary that the error should be manifest on the face of the record. A defect in an indictment that was ground for a general demurrer was sufficient to arrest judgment.

 Now not only is the motion in arrest of judgment rigidly restricted to the record, but it is further restricted by federal statutes and rules of criminal procedure. By an act of June 1, 1872,[1] it was provided that no indictment should be deemed insufficient in any court of the United States by reason of any defect in matter of form that did not tend to the prejudice of the accused. This statute is sometimes referred to as the federal statute of jeofails.[2] It definitely limits the operation of the ' common-law motion. The overruling of a motion in arrest of judgment is reviewable on appeal;[3] and then, as was pointed out in our original opinion, another statute comes into play, 18 U.S.C.A. § 556.

The appellant in this case was tried, convicted, sentenced, and the judgment against him appealed from, before March 21, 1946, which was the effective date of the present Federal Rules of Criminal Procedure. Prior to that time the procedural rules applicable to this proceeding in the trial court were the Rules of Practice and Procedure, After Plea of Guilty, Verdict or Finding of Guilt, etc., promulgated by the Supreme Court in 1934.[4] It is stated by the Advisory Committee in a note to Rule 34 of the present rules that it continues existing law except that it enlarges the time for making motions in arrest of judgment from three days to five days.

Rule 59 of the present rules provides that they shall "govern all criminal proceedings thereafter commenced and so far as just and practicable all proceedings then pending." For these reasons it is important to refer to said Rule 34, which is as follows:

"Rule 34 Arrest of Judgment. The court shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged. The motion in arrest of judgment shall be made within 5 days after determination of guilt or within such further time as the court may fix during the 5-day period."

 In plain words, the above rule peremptorily provides that the court shall arrest judgment if the indictment or in-

---

[1] 17 Stat. 198, c. 255, Sec. 8, 18 U.S.C.A. § 556.

[2] Dobie on Federal Procedure, Sec. 30, p. 67.

[3] Blitz v. United States, 153 U.S. 308, 312, 14 S.Ct. 924, 925, 38 L.Ed. 725; Rodriguez v. United States, 198 U.S. 156, 165, 25 S.Ct. 617, 620, 49 L.Ed. 994.

[4] 292 U.S. 661, 18 U.S.C.A. following section 688.

formation does not charge an offense. That this was the law prior to March 21, 1946, and at the time of the trial below, is clear from the authorities,[5] except as to the change of time within which such motions may be made. With this minor exception, Rule 34 is merely declaratory of existing law; it does not conflict with 18 U.S.C.A. § 556 or 28 U.S.C.A. § 391, but should be interpreted harmoniously with these procedural statutes;[6] and neither this rule nor these statutes impaired or restricted the right of an accused to be fully and definitely informed of the particular charge against him. Every defendant in a criminal case has the right to be informed of the essential factual elements of the offense sought to be charged. The Sixth Amendment guarantees it. To withhold essential facts that are required to describe the accusation with reasonable certainty is to deny full information of the nature and cause of the accusation.

Upon the subject of the necessity of an indictment or information containing every essential element of the offense, no more direct and positive statement has been found than that of Hutcheson, Circuit Judge, concurring in Grimsley v. United States, 50 F.2d 509, 511, 512, as follows:

"The opinion of the majority is an extremely simple and, as I think, correct statement of the principle that two substantial things must concur before a defendant may be convicted of a felony in a court of the United States; (1) He must be charged by indictment with the commission of a federal offense; (2) the offense must be proven against him.

"I have always supposed that as an indictment without proof cannot support a conviction, so proof without indictment cannot.

"That Congress by the Act of February 26, 1919, 28 U.S.C.A. § 391, either intended or has effected the result that in federal courts proof of a federal offense is now the only matter of substance, that indictment is mere technicality, and may, when proof is ample, be entirely dispensed with, I do not believe.

"No case has yet been found by me which declares that failure to charge the essential element of an offense is a mere technicality; on the contrary, there is general concurrence in the statement that if 'the indictment fails to state facts sufficient to constitute the crime charged, the judgment of conviction cannot, of course, be sustained.' Sonnenberg v. United States, 9 Cir., 264 F. 327, 328; Wong Tai v. United States, 273 U.S. 77, 80, 47 S.Ct. 300, 71 L.Ed. 545; Wishart v. United States, 8 Cir., 29 F.2d 103, 106; Shilter v. United States, 9 Cir., 257 F. 724, and this even in the absence of an attack of any kind upon the indictment in the court below. Sonnenberg v. United States, 9 Cir., 264 F. 327, 328.

"Where the indictment has been challenged by demurrer, raising not technicality, but matters of substance, and the demurrer has been erroneously overruled, by that much more is it clear that a conviction upon such indictment must be reversed. Moore v. United States, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422.

"Technicality and substance are not so confused in my mind as that I can bring myself to believe that failure to charge the substantive elements of a federal offense constitutes 'technical error, defect, or exception which does not affect the substantial rights' of the defendant."

It is expressly held in the above case that an indictment is fatally defective if it omits an essential element of the offense sought to be charged;[7] and that the right of an accused to be informed of the nature and cause of the accusation against him

5 Blitz v. United States, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725; Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709; Ledbetter v. United States, 170 U.S. 606, 614, 18 S.Ct. 744, 777, 42 L.Ed. 1162; Clement v. United States, 8 Cir., 149 F. 305; Morris v. United States, 8 Cir., 168 F. 682; Floren v. United States, 8 Cir., 186 F. 961.

6 Rule 34 was promulgated by the Supreme Court pursuant to the Act of June 29, 1940, ch. 445, 54 Stat. 688, 18 U.S.C.A. § 687. It provides that after the effective date "all laws in conflict therewith shall be of no further force and effect."

7 Citing Evans v. United States, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830.

is a substantial right, the enjoyment of which is assured by the Sixth Amendment.[8] Then for good measure the court adds: "It is not a mere technical or formal right, within the meaning of 18 U.S.C.A. § 556 or 28 U.S.C.A. § 391."

It is true that these rulings were upon demurrers to indictments, but this is immaterial since the defect was not technical but substantial. In fact, there can be no more substantial error committed against a defendant than the denial of his constitutional rights under the Sixth Amendment. For such an error it was held in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357, that the court lost jurisdiction of the case. There the court said, 304 U.S. at page 468, 58 S.Ct. at page 1024, 82 L.Ed. 1461, 146 A.L.R. 357: "If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed." We do not mean to hold or imply that the court below lost jurisdiction in the instant case, but we make the comparison to demonstrate how real and substantial is the right of an accused to be informed of the nature and cause of the accusation against him, and how unsound is the contention that an error of this character is formal or technical. In the concurring opinion of Judge Hutcheson, above quoted, it was pointed out that, if the indictment fails to state facts sufficient to constitute the crime charged, the judgment of conviction cannot be sustained "even in the absence of an attack of any kind upon the indictment in the court below."

We need to say only a few more words with reference to the uncertainty and insufficiency of the offense charged in this information. It is indisputable that ration orders No. 3 and 8 contained literally hundreds of prohibitions, the violation of each of which was a crime. Ration order No. 8 contained not just two sentences but pages of prohibitions. It is correct that Sec. 2.8 of Art. II of said order No. 8 contained two sentences, each of which

defined separate offenses, the first referring to sugar *possessed* and the second to sugar *acquired* in violation of said order. This section was only one of sixteen paragraphs of prohibitions, i. e. crimes, denounced in Article II of General Ration Order No. 8, to say nothing of those in order No. 3. From the great number of prohibitions in orders No. 3 and 8, we are asked to decide which was the particular offense intended to be charged. On this subject the dissenting opinion said:

"Ration order No. 8 has two sentences. The first prohibits the acquisition, possession, use, etc. of a rationed commodity 'except in accordance with the provisions of a ration order'. The second sentence reads, 'No person shall possess, use, permit the use of, sell, or otherwise transfer any rationed commodity acquired in violation of a ration order'. *The first sentence is a statement, by way of exception, of a defense to illegal possession.* The second sentence, a statement of what constitutes unlawful possession, in itself negates lawful possession. *The information followed the second sentence precisely,* and it is the uniform rule that it is sufficient to charge an offense in the language of the law denouncing it." [Italics supplied.]

The court below in its charge instructed the jury as if the defendant were being tried under the first sentence, and also as if he were being tried at the same time for an offense under the second sentence. The situation may be summarized thus: Two of the judges of this court think that no offense is sufficiently stated in the information; one of us thinks that the information followed the second sentence in Sec. 2.8 of Art. II of Order No. 8; and the district judge tried the case as if two offenses were charged in the information. Can it be said that such a situation leaves no doubt in the minds of the accused and the court of the exact offense intended to be charged?[9]

Orders No. 3 and 8 are a loose-leaf code of regulations and prohibitions that were promulgated, construed, explained by ra-

---

[8] Citing United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 31 L. Ed. 516.

[9] In Ledbetter v. United States, 170 U. S. 606, at pages 609, 610, 18 S.Ct. 774, at page 775, 42 L.Ed. 1162, the court said: "We have no disposition to quali-

tionals, and amended repeatedly.[10] The information in this case amounts to no more than charging the defendant with violating this criminal code by having in his possession and under his control ten thousand pounds of sugar. If this judgment were affirmed, the uncertainty as to the nature and cause of the accusation would render equally uncertain a plea of former conviction if later the appellant should be brought to trial for acquiring, transporting, or possessing, this same sugar without a ration order or certificate. By this test, as well as by the other one stated in our prior opinion, the information is insufficient to meet the requirements of the Sixth Amendment.

Contrary to what the petition for rehearing contends, we have not overlooked Section 17.11 of Second Revised Ration Order No. 3.[11] This section is not complete in itself; its complement must be found elsewhere in the same order if we are to ascertain every ingredient of the offense. It prohibits the possession of sugar where such possession is in violation of "this order," meaning No. 3. No reference is made to order No. 8, and the court cannot rewrite these two into one but must construe them harmoniously as separate regulations. We discussed order No. 8 in our original opinion, and we are now dealing solely with No. 3. We found the information insufficient under No. 8; we found both the regulation and the information insufficient under No. 3. If we combined the two, however, the information would suffer from the same infirmity that affects it as to each one separately, viz., the absence of an essential element of the offense.

The petition for rehearing fails to point out "where" the possession of sugar is in violation of said Section 17.11. It cites this section but mentions no other relevant provision supplementary thereto. It also cites Section 19.3 of order No. 3, which provides that each consumer is permitted to obtain five pounds of sugar during a specified period; but this is far from citing any section of order No. 3 that prohibits the possession of sugar not in accordance with a ration order. Undeterred by this, the petitioner argues that a brief survey of the history of sugar rationing discloses that the mere possession of sugar in excess of the quantity allotted to individuals is an offense under the regulations, but it cites no applicable section, and in the course of such argument there is a palpable shift by petitioner from order No. 3 to order No. 8. Since the combined research of the court and counsel has failed to discover any provision of order No. 3, supplementary to Section 17.11, prohibiting the mere possession of sugar, we adhere to our former ruling that there is no such prohibition so far as order No. 3 is concerned.

Since neither of the judges who concurred in the decision in this case is of the opinion that the petition for rehearing should be granted, the petition is denied.

HUTCHESON, Circuit Judge, dissents.

---

fy what has already been frequently decided by this court, that where the crime is a statutory one it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged. United States v. Cook, 17 Wall. 168, 174, 21 L.Ed. 538; United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588; United States v. Carll, 105 U. S. 611, 26 L.Ed. 1135; United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819; United States v. Hess, 124 U.S. 483, 31 L. Ed. 516; Pettibone v. United States, 148

· U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419; Evans v. United States, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830."

10 Second Revised Ration Order No. 3 was issued on November 14, 1944, consisted of twenty-six pages, and was amended fifty-five times up to and including December 21, 1945. General Ration Order No. 8 was issued on March 25, 1943, and amended twelve times up to and including June 30, 1945.

11 "Sec. 17.11. Unlawful Use of Possession. No person shall at any time either use or have in his possession or under his control or take delivery of any sugar, certificates, stamps or War Ration Books, where such possession, control, or acquisition is in violation of this order."